**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Betsy C. Manifold (182450)
Rachele R. Byrd (190634)
Marisa C. Livesay (223247)
Brittany N. DeJong (258766)
750 B Street, Suite 1820
San Diego, CA 92101
T: 619-239-4599
F: 619-234-4599

**LEVI & KORSINSKY, LLP**
Correy Kamin
Ryan Messina
55 Broadway, 10th Floor
New York, NY 10006
T. 212.363.7500
F. 212.363.7171

*Attorneys for Plaintiff Sachin Chaudhari*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

SACHIN CHAUDHARI, Derivatively on Behalf of SORRENTO THERAPEUTICS, INC.,

Plaintiff,

v.

HENRY JI, MARK R. BRUNSWICK, DORMAN FOLLOWWILL, KIM D. JANDA, DAVID LEMUS, JAISIM SHAH, ROBIN L. SMITH, YUE ALEXANDER WU, and EDGAR LEE,

Individual Defendants,

-and-

SORRENTO THERAPEUTICS, INC., a Delaware corporation,

Nominal Defendant.

Case No. '21CV1331 JLS LL

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

Plaintiff Sachin Chaudhari ("Plaintiff"), by his attorneys, submits this Verified Stockholder Derivative Complaint for violations of securities laws, breach of fiduciary duty, waste of corporate assets, and unjust enrichment. Plaintiff alleges the following upon information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge. This complaint is also based on the investigation of Plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder derivative action brought by Plaintiff on behalf of Nominal Defendant Sorrento Therapeutics, Inc. ("Sorrento" or the "Company") against members of its board of directors (the "Board") and members of upper management. The wrongdoing alleged herein has caused substantial damage to Sorrento's reputation, goodwill, and standing in the business community and has exposed Sorrento to substantial potential liability for violations of federal securities laws and the costs associated with defending itself. The violations of the law outlined herein have damaged Sorrento in the form of, among other things, millions of dollars in losses to the Company's market capitalization.

2. This action seeks to remedy wrongdoing committed by Sorrento's directors and officers from May 15, 2020 through the present (the "Relevant Period").

3. Sorrento is a clinical-stage biopharmaceutical company that purports to apply cutting-edge science to create antibody therapies to treat people with cancer, pain, and COVID-19 (a/k/a the coronavirus or SARS-CoV-2). The Company was formed in 2009 and has not obtained any approval from the United States Food and Drug Administration ("FDA") for any drugs that the Company developed on its own. The Company has one commercially viable product, which it obtained when it acquired Scilex Pharmaceuticals, Inc. in 2016.

4. Prior to and during the Relevant Period, the Company focused on developing an antibody therapy, STI-1499, to treat people who have COVID-19.

5. Sorrento has a G-MAB antibody library, which contains more than 10 quadrillion fully-human monoclonal antibody sequences.[1]

6. In February 2020, in response to coronavirus outbreaks around the world, the Company began screening its G-MAB library to try to find one out of 10 quadrillion antibodies that could be effective against the coronavirus.

7. Since then, the coronavirus was declared a global pandemic by the World Health Organization. The virus has claimed over 3.8 million lives and infected over 179 million people worldwide.

8. On March 31, 2020, the Company announced that it entered into a research agreement with the University of Texas Medical Branch at Galveston for the preclinical testing of Sorrento's COVID-19 therapeutic product candidates.

9. On May 8, 2020, the Company announced a partnership with Mount Sinai Health to investigate and develop an antibody cocktail, COVI-SHIELD, to treat COVID-19. The cocktail would contain three antibodies designed to block and neutralize the coronavirus. In search of antibodies for the cocktail, Sorrento screened a billion antibodies and found twelve with some promise. One of the twelve, STI-1499, stood out as the most viable candidate.

10. From May 15, 2020 through May 21, 2020, the Individual Defendants caused the Company to issue materially false and misleading statements regarding STI-1499's viability as a cure for COVID-19, touting STI-1499 as an answer to the global pandemic.

11. When the Individual Defendants claimed STI-1499 was a cure for COVID-19, however, it was only in the early stages of pre-clinical testing.

---

[1] Antibodies are proteins that human bodies make to fight viruses. Monoclonal antibodies are made in a laboratory and then act like natural antibodies.

12. There is a long and arduous road from identifying a potentially effective antibody to having an FDA approved cure. First, there are stages of preclinical testing, where animal and laboratory tests are done. Then, after the preclinical stage, the treatment enters three phases of clinical testing. Phase I involves administering the treatment to a small number of participants to test for some signs of effectiveness but mostly for safety. Phase II involves administering the treatment to hundreds of volunteers to test safety with more emphasis on effectiveness. Phase III involves administering the treatment to thousands of volunteers to further test effectiveness and safety. Finally, the FDA rigorously reviews all the data and then decides whether or not to approve the treatment.

13. On September 28, 2020, Sorrento announced the pre-clinical results for STI-1499. During the study of STI-1499, some cells produced an antibody with even greater potential, STI-2020. STI-2020 replaced STI-1499 in the COVI-SHIELD cocktail. STI-1499 was now only being developed for COVI-GUARD, a cocktail for patients with moderate COVID-19. The Phase I study of STI-1499's viability for COVI-GUARD was supposed to start sometime in September and end in January 2021. According to the U.S. government's clinical trial webpage, Sorrento withdrew from the study because the Company could not recruit enough volunteers.[2] This status was last updated January 8, 2021.

14. The Individual Defendants breached their fiduciary duties by issuing these false and misleading statements and omissions of material fact.

15. As detailed herein, and as alleged in the ongoing federal securities class action in the Southern District of California styled *Wasa Medical Holdings v. Sorrento Therapeutics, Inc. et al.*, Case No. 3:20-cv-00966-AJB-DEB, (the "Federal Securities Class Action"), Sorrento's officers and directors substantially damaged the Company by falsely claiming STI-1499 was a cure for the coronavirus.

---

[2] *See* https://clinicaltrials.gov/ct2/show/NCT04454398?term=STI-1499&draw=2&rank=1 (last visited July 20, 2021).

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a) and 78t-1) and raise a federal question pertaining to the claims made in the Federal Securities Class Action based on violations of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17. This derivative action is not a collusive action to confer jurisdiction on a court of the United States that would not otherwise have such jurisdiction.

18. Venue is proper in this District because the Company's principal place of business is in this District and the Individual Defendants have been involved in business in this District. Further, Defendants' actions have had an effect in this District and the Federal Securities Class Action is pending in this District.

## THE PARTIES

### Plaintiff

19. Plaintiff Sachin Chaudhari is and has continuously been a stockholder of Sorrento during the wrongdoing complained of herein.

### Nominal Defendant

20. Nominal Defendant Sorrento is a Delaware corporation with its principal executive offices at 4955 Directors Place, San Diego, California 92121. Sorrento's shares trade on the NASDAQ under the ticker symbol "SRNE."

### Individual Defendants

21. Defendant Henry Ji ("Ji") has served as the Company's CEO and President since 2012. According to the Company's Form DEF 14A filed September 1, 2020 (the "2020 Proxy"), he has served as a director since 2006. According to the 2020 Proxy, Ji received $8,114,393 in total compensation from the Company for the fiscal year ending December 31, 2019. Ji is a named defendant in the Federal Securities Class Action.

22. Defendant Mark R. Brunswick ("Brunswick") joined Sorrento in 2017 and currently serves as Senior Vice President of Regulatory Affairs. He has experience in senior positions at the FDA's Center for Biologics, Division of Monoclonal Antibodies. Brunswick is a named defendant in the Federal Securities Class Action.

23. Defendant Dorman Followwill ("Followwill") has served as a director of the Company since October 2017 and as its lead independent director since August 2020. He is a member of the Audit, Compensation, and Corporate Governance and Nominating Committees. According to the 2020 Proxy, Followwill received $294,493 in total compensation from the Company for the fiscal year ending December 31, 2019.

24. Defendant Kim D. Janda ("Janda") has served as a director of the Company since April 2012. He is the Chairperson of the Corporate Governance and Nominating Committee. According to the 2020 Proxy, Janda received $332,650 in total compensation from the Company for the fiscal year ending December 31, 2019.

25. Defendant David Lemus ("Lemus") has served as a director of the Company since October 2017. He serves as the Chairperson of the Audit Committee. According to the 2020 Proxy, Lemus received $291,400 in total compensation from the Company for the fiscal year ending December 31, 2019.

26. Defendant Jaisim Shah ("Shah") has served as a director of the Company since September 2013. According to the 2020 Proxy, Shah received $10,971,136 in total compensation from the Company for the fiscal year ending December 31, 2019.

27. Defendant Robin L. Smith ("Smith") has served as a director of the Company since December 2019. According to the 2020 Proxy, Smith received $225,116 in total compensation from the Company for the fiscal year ending December 31, 2019.

28. Defendant Yue Alexander Wu ("Wu") has served as a director of the Company since August 2016. Wu is a member of the Audit Committee and

Chairperson of the Compensation Committee. According to the 2020 Proxy, Wu received $301,400 in total compensation from the Company for the fiscal year ending December 31, 2019.

29. Defendant Edgar Lee ("Lee") served as a Company director from December 2019 until October 16, 2020. According to the 2020 Proxy, Lee received $215,250 in total compensation from the Company for the fiscal year ending December 31, 2019.

30. Collectively, Individual Defendants Followwill, Lemus, and Wu, are referred to herein as the "Audit Committee Defendants."

31. Collectively, Individual Defendants Ji, Brunswick, Followwill, Janda, Lemus, Shah, Smith, Wu, and Lee, are referred to herein as the "Individual Defendants."

32. The Individual Defendants, because of their positions with Sorrento, possessed the power and authority to control the contents of Sorrento's press releases. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance, and each had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made about STI-1499 were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### The Individual Defendants' False and Misleading Statements

#### *May 15, 2020 Form 8-K*

33. On May 15, 2020, the Company filed a Form 8-K with an attached press release announcing that "STI-1499[] demonstrated **100% inhibition of SARS-CoV-2 virus** infection in an in vitro virus infection experiment at a very low antibody

concentration." (Emphasis added). The press release went on to claim that billions of antibodies were tested for efficacy against the coronavirus and a dozen of them demonstrated the ability to block it. One of those antibodies "stood out for its ability to **completely block SARS-CoV-2 infection of healthy cells in the experiments. STI-1499 completely neutralized the virus infectivity at a very low antibody dose**[.]" (Emphasis added).

***May 15, 2020 Fox News Article***

34. That same day, Fox News published an article about the Company titled "California biopharmaceutical company claims coronavirus antibody breakthrough."[3] The article quoted Defendants Ji and Brunswick regarding the viability of STI-1499. The article stated, in relevant part:

> Later Friday, Sorrento Therapeutics will announce their discovery of the STI-1499 antibody, which the San Diego company said can provide "**100% inhibition**" of COVID-19, adding that a treatment could be available months before a vaccine hits the market.
>
> "**We want to emphasize there is a cure. There is a solution that works 100 percent," Dr. Henry Ji, founder and CEO of Sorrento Therapeutics, told Fox News.** "If we have the neutralizing antibody in your body, you don't need the social distancing. You can open up a society without fear."
>
> **"This puts its arms around the virus. It wraps around the virus and moves them out of the body."**
> — Dr. Henry Ji, CEO and founder, Sorrento Therapeutics
>
> ***
>
> Through further testing, the researchers at Sorrento found that there was one particular antibody that **showed to be 100 percent effective in blocking COVID-19 from infecting health cells — STI-1499**.
>
> "When the antibody prevents a virus from entering a human cell, the virus cannot survive," Dr. Ji said. "If they cannot get into the cell, they cannot replicate. So it means that if we prevent the virus from getting the cell, the virus eventually dies out. The body clears out that virus."
>
> ***

---

[3] *See* https://www.foxnews.com/science/covid-cure-california-biopharmaceutical-coronavirus-antibody-breakthrough (last visited July 20, 2021).

> "**This is the best solution**," [Ji] said. "The point of making a vaccine is to generalize a neutralizing antibody. So, if you already have one, you don't need to the body to generate one from a vaccine. You've already provided it. You're cutting out the middleman."
>
> ***
>
> "**As soon as it is infused, that patient is now immune to the disease**," Dr. Brunswick said to Fox News. "For the length of time, the antibody is in that system. So, **if we were approved [by the FDA] today, everyone who gets that antibody can go back to work and have no fear of catching COVID-19.**"

(Emphasis added).

***May 15, 2020 BioSpace Article***

35. Also on May 15, 2020, BioSpace published an article titled "Sorrento IDs Antibody Against COVID-19 That Appears 100% Effective."[4] The article states that Defendants Brunswick and Ji "spoke with BioSpace about the announcement." The article stated, in relevant part:

> A week ago, Sorrento announced it was teaming up with New York City-based Mount Sinai Health System to develop an antibody cocktail called COVI-SHIELD to treat COVID-19. The partnership is aimed at creating antibody products that could act as a "protective shield" against infection by the virus that causes COVID-19, SARS-CoV-2. COVI-SHIELD is expected to deliver a mixture of three antibodies that combined recognize three specific regions of the SARS-CoV-2 Spike protein.
>
> The company announced on Friday that one of its antibodies, **STI-1499, has shown 100% inhibition of SARS-CoV-2 in laboratory tests**. Henry Ji, Sorrento's co-founder, director, president and chief executive officer, and Mark Brunswick, vice president of Regulatory Affairs and Quality, took time out to speak with BioSpace ahead of the announcement.
>
> ***
>
> "We're actually so impressed with the data," Ji said. "**One of the antibodies is so powerful that at a very low concentration it is able to 100% completely prevent infection or inhibit the infection. In our studies, not even one virus escaped from the antibody.**"
>
> **That was STI-1499.** Currently, Sorrento believes STI-1499 will be the first antibody in the three-antibody cocktail, COVI-SHIELD, which it is developing with Mount Sinai. Additionally, because of its

---

[4] *See* https://www.biospace.com/article/sorrento-ids-antibody-against-covid-19-that-appears-100-percent-effective/ (last visited July 20, 2021).

> high potency, it plans to develop the antibody as a stand-alone therapy, COVI-GUARD.
>
> "**So what we've done is identified an antibody that recognizes the COVID-19 virus and completely inhibits its binding to the specific receptor. This is grown up in vitro, in tissue culture, in cell fermenters**[,]" [stated Brunswick].
>
> ***
>
> "The difference between an antibody and a vaccine is that a vaccine takes either a protein from the virus, or—some of them aren't real vaccines, but people are calling them vaccines—where DNA or RNA is being injected into patients' arms and making material in the patient that then the patient's immune system responds to what's being made," Brunswick said. "The problem with that is not every patient will respond to a vaccine. Some will have 10% efficacy, some will have 20% efficacy, some will have 90% efficacy. But until you've gone into large trials and assessed everyone, you won't know the full extent a vaccine works**. An antibody gives instantaneous protection against the virus.**"

(Emphasis added).

36. Individual Defendants Ji and Brunswick touted the viability of STI-1499, telling the market that it was 100% effective at preventing infection. They also claimed that their product would be more useful because it is an antibody which gives "instantaneous protection against the virus" and "completely inhibits" the coronavirus's ability to bind to specific receptors.

37. The market reacted extremely positively to the Individual Defendants' statements as described above. On May 15, 2020, a Friday, the Company's stock price closed at $6.76, a 158% increase from the previous day's closing price of $2.62. On May 18, 2020, the following Monday, the Company's stock price hit a high of $10 per share, a 262.3% increase from May 14, 2020's closing price.

**<u>The Truth Begins to Emerge</u>**

***May 20, 2020 Hindenburg Research and Viceroy Research reports***

38. At approximately 9:40 a.m. Eastern Time on May 20, 2020, Hindenburg Research published an analyst report titled "Sorrento's Pandemic Profiteering: Experts and Former Employees Speak Out on Sensational Claims of Covid-19 Cure"

criticizing claims made by Individual Defendants Ji and Brunswick on May 15, 2020 that STI-1499 was a cure.[5]

39. The Hindenburg report quoted former employees who were extremely skeptical of the May 15, 2020 announcements. "I would never in my life have put out a press release where I say we have a cure," a former Sorrento senior executive told Hindenburg Research. "I suggest extreme skepticism regarding any claims made by Sorrento," another former employee told Hindenburg Research. The report went onto state, in relevant part:

> After speaking with former Sorrento company employees, including those who held senior C-suite and management positions, as well as healthcare experts from outlets like the National Institute of Health and Mt. Sinai (a partner of Sorrento), we came to the conclusion that this "too good to be true" sounding story is exactly that.
>
> We don't doubt that Sorrento has found the antibody that it claims. One former employee we spoke with said he would be surprised if they couldn't find the antibody, given their extensive antibody library. Nonetheless, **the company remains in the preliminary stages of what we understand to be an arduous process to take its antibody from experiments in vitro (in a petri dish) to a safe and effective treatment in vivo (in humans).**
>
> ***
>
> **Given the historical inability to move its extensive R&D efforts into commercialization, and his litany of historical red flags, Sorrento seemed like an unlikely savior in the fight against COVID-19.**

(Emphasis added).

40. The Hindenburg report also pointed out some "red flags" about the Company's management:

> Additionally, during the course of our research, we uncovered a number of red flags about Sorrento's past that make us wary not only about the company's recent claims, but its management team in general.
>
> For example, we found that mere weeks ahead of the 'cure' announcement, the company put in place a $250 million financing arrangement with an opaque entity in the British Virgin Islands. The company didn't disclose the ultimate backer of the entity, but we

[5] *See* https://hindenburgresearch.com/sorrento/ (last visited July 20, 2021).

> learned through multiple industry sources that it's the same individual that helped finance DryShips, a public market disaster which fell 99.9% and did 8 reverse splits between 2016 and 2017.

41. During pre-market hours, another analyst report by Viceroy Research stated that Sorrento was engaging in "predatory propaganda" by continuing its "long history of unsuccessfully tailgating fads[.]" Viceroy Research claimed the Company was riding a "pandemic wave" to "pump[] its stock price[.]"

42. The above skeptical analyst reports created downward pressure on the stock during early trading hours, creating a low of $4.55 per share that day.

***May 20, 2020 Yahoo! Finance Live Appearance***

43. The downward pressure ceased when Individual Defendant Ji appeared live on Yahoo! Finance at approximately 10:15 a.m. eastern time on May 20, 2020, in an attempt to soothe analysts' concerns.[6]

44. During the live appearance, Defendant Ji claimed:

> So, you have the antibody that can prevent the virus from infecting healthy cells…If you have a real product, eventually the stock is going to be reflecting the assets you have. And we believe right now probably there's a lot of investors excited about this story. However, there is a lot of investors suspecting this is another pump and dump, which is typical, which is normal, but we don't believe that's the case.

45. During the live appearance, Ji not only failed to correct the Individual Defendants' past false statements indicating that STI-1499 was a cure for COVID-19, but doubled down and assured investors that this was not a "pump and dump" scheme.

46. On May 20, 2020, the Company's stock price closed at $5.70 per share, a 25% increase compared to the stock's low that day of $4.55.

---

[6] *See* https://finance.yahoo.com/news/sorrento-therapeutics-founder-we-are-not-a-pump-and-dump-scheme-155253179.html (last visited July 20, 2021)

47. The Individual Defendants took advantage of the investing public's fear of the coronavirus when they falsely and misleadingly claimed they had a "cure" that could "100%" inhibit the coronavirus.

**The Truth Fully Emerges**

***May 22, 2020 BioSpace article***

48. On May 22, 2020, BioSpace published an article titled "Sorrento Responds to Criticism of COVID-19 Neutralizing Antibodies."[7] The article contained an interview of Individual Defendants Ji and Brunswick from May 21, 2020. During the interview Ji claimed "that they did not say [STI-1499] was a cure[.]" However, Individual Defendants Ji and Brunswick admitted that STI-1499 "potentially is a cure," that STI-1499 "might be able to remove the virus from the patient," and that "[i]t's all speculation[.]"

49. That same day, in reaction to Individual Defendants Ji and Brunswick walking back their statements through the BioSpace interview, the Company's stock price dropped from a daily high of $5.35 per share to close at $5.07 per share.

50. Due to the Individual Defendants' materially false and misleading statements regarding having found the "cure" for the coronavirus, suggesting that it would allow society to "open up [] without fear[,]" the Company now faces the costs of defending against the Federal Securities Class Action and the risk of liability.

## FIDUCIARY DUTIES

51. By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and continues to owe Sorrento and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care and was/is required to use his/her utmost ability to control and manage Sorrento in a fair, just, honest, and equitable manner. The Individual Defendants were/are required to

---

[7] *See* https://www.biospace.com/article/sorrento-responds-to-criticism-of-covid-19-neutralizing-antibodies-i-will-believe-the-data-/ (last visited July 20, 2021).

act in furtherance of the best interests of Sorrento and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

52. Each Individual Defendant owes and continues to owe Sorrento, and its stockholders, the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

53. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Sorrento, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their executive and/or directorial positions with Sorrento, each of the Individual Defendants had knowledge of material, nonpublic information regarding the Company. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's business practices, operations, financials, financial prospects, compliance policies, and internal controls so that the market price of the Company's stock would be based on truthful and accurate information.

54. To discharge their duties, the Individual Defendants were/are required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. The Individual Defendants were required to, among other things:

(a) ensure that the Company complied with its legal obligations and requirements—including requirements involving the filing of accurate financial and operational information with the SEC—and refrain from engaging in insider trading and other deceptive conduct;

(b) conduct the affairs of the Company in compliance with all applicable laws, rules, and regulations to make it possible to provide the highest quality performance of its business, avoid wasting the Company's assets, and maximize the value of the Company's stock;

(c) remain informed as to how Sorrento conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make a reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

> (d) truthfully and accurately guide investors and analysts as to the business operations of the Company at any given time.

**Duties Pursuant to the Company's Code of Business Conduct**

55. The Individual Defendants, as officers and/or directors of Sorrento, were bound by the Company's Code of Business Conduct and Ethics[8] (the "Code of Conduct") which required the following:

> Sorrento expects every employee, officer and director to read and understand this Code and its application to the performance of his or her business responsibilities, comply with its provisions and report any suspected violations using the procedures described in Section 20 below. This Code applies to all employees, directors, officers and consultants of Sorrento worldwide.
>
> ***
>
> 1. Honest and Ethical Conduct
>
> It is the policy of Sorrento to promote high standards of integrity by conducting Sorrento's affairs in an honest and ethical manner. The integrity and reputation of Sorrento depends on the honesty, fairness and integrity brought to the job by each person associated with Sorrento. Unyielding personal integrity is the foundation of corporate integrity.
>
> 2. Legal Compliance
>
> ***
>
> Disregard of the law will not be tolerated. Violation of domestic or foreign laws, rules and regulations may subject an individual, as well as Sorrento, to civil and/or criminal penalties. You should be aware that conduct and records, including emails, are subject to internal and external audits and investigations, and to discovery by third parties in the event of a government investigation or civil litigation. It is in everyone's best interests to know and comply with Sorrento's legal and ethical obligations.
>
> ***
>
> 11. Maintenance of Corporate Books, Records, Documents and Accounts; Financial Integrity; Public Reporting
>
> The integrity of Sorrento's records and public disclosure depends upon the validity, accuracy and completeness of the information

[8] *See* Sorrento's Code of Conduct: https://investors.sorrentotherapeutics.com/static-files/19c2ae8a-3afd-441b-8bb7-17269188e1a9 (last visited July 20, 2021).

> supporting the entries to Sorrento's books of account. Therefore, Sorrento's corporate and business records should be completed accurately and honestly. The making of false or misleading entries, whether they relate to financial results or test results, is strictly prohibited. Sorrento's records serve as a basis for managing its business and are important in meeting its obligations to customers, suppliers, creditors, employees and others with whom Sorrento does business. As a result, it is important that Sorrento's books, records and accounts accurately and fairly reflect, in reasonable detail, Sorrento's assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities.
>
> ***
>
> 18. Media Public Discussions
>
> It is Sorrento's policy to disclose material information concerning Sorrento to the public only through specific limited channels to comply with applicable law, avoid inappropriate publicity and to ensure that all those with an interest in Sorrento will have equal access to information. All inquiries or calls from the press and financial analysts should be referred to the Chief Executive Officer. **Sorrento has designated its Chief Executive Officer as the company's official spokesperson for financial matters and for marketing, technical and other related information.** Unless a specific exception has been made by the Chief Executive Officer, this designee is the only person who may communicate with the press on behalf of Sorrento. You also may not provide any information to the media about Sorrento off the record, for background, confidentially or secretly, including, without limitation, by way of postings on internet websites, chat rooms, message boards or blogs.

(Emphasis added).

56. The Code of Conduct includes a certification required to be signed by employees, officers, and directors. The signer agrees to "ensure that, [] all reports and documents filed with or submitted to the United States Securities and Exchange Commission by Sorrento and in other public communications made by Sorrento, Sorrento's disclosures are full, fair, accurate, timely and understandable." Additionally, the signer agrees to "comply with all laws, rules and regulations applicable to my work responsibilities in every country in which Sorrento does business."

57. The Individual Defendants failed to adhere to the Code of Conduct when they made materially false and misleading statements to the public about having a cure for the coronavirus.

58. In addition to these duties, the Audit Committee Defendants, who served on the Audit Committee during the Relevant Period, owed specific duties to Sorrento under the Audit Committee Charter (the "Audit Charter").[9] Specifically, the Audit Charter provided for the following responsibilities of the Audit Committee Defendants:

> The Corporation's Board of Directors (the "Board") has responsibility to oversee management's exercise of these responsibilities. To assist the Board, the Corporation has established an Audit Committee (the "Committee") whose authority and responsibilities are described by this Charter.
>
> ***
>
> The Committee will review with management and the independent registered public accounting firm their assessments of the adequacy of internal control over financial reporting, and the resolution of identified material weaknesses and significant deficiencies in internal control over financial reporting or disclosure controls and procedures.
>
> ***
>
> The Committee will discuss with management the Corporation's policies with respect to risk assessment and risk management, significant financial risk exposures and the actions management has taken to limit, monitor or control such exposures.

59. The Individual Defendants failed to adhere to the Code of Conduct and the Audit Committee Defendants failed to uphold their duties required by the Audit Charter by issuing materially false and misleading public statements about having a cure for a virus that shut down the world. Additionally, the Individual Defendants violated the Company's Code of Conduct when they allowed Brunswick to speak to the press with Ji.

## BREACHES OF DUTIES

60. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and/or directors of

---

[9] *See* Sorrento's Audit Charter at: https://investors.sorrentotherapeutics.com/static-files/badd2675-f7ae-47eb-a593-82b8ed0bf8a4 (last visited July 20, 2021).

Sorrento, the absence of good faith on their part, and a reckless disregard for their duties to the Company.

61. The Individual Defendants breached their duty of loyalty and good faith by utterly failing to implement a reasonable, relevant, meaningful, and well-constituted system of internal controls, especially with respect to disclosure of material information regarding STI-1499's ability to cure the coronavirus. The Individual Defendants also breached their duty of loyalty and good faith by allowing the Company to cause, or by themselves causing, the Company to make improper statements to the public and the Company's stockholders. These unlawful practices wasted the Company's assets and caused Sorrento substantial damage.

62. The Audit Committee Defendants had a duty to review the Company's public statements. The Audit Committee Defendants breached their duty of loyalty and good faith by approving the dissemination of materially false information, making the improper statements detailed herein, and failing to properly oversee Sorrento's public statements and internal control function.

63. The Individual Defendants, because of their positions of control and authority as officers and/or directors of Sorrento, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein. The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions. In addition, because of Individual Defendants' improper course of conduct, the Company is now the subject of the Federal Securities Class Action, which alleges violations of federal securities laws. As a result, Sorrento has expended, and will continue to expend, significant sums of money.

## DAMAGES TO SORRENTO

64. The materially false public statements have exposed the Company to myriad reputational and financial damages, including but not limited to:

(a) Liability arising from the Federal Securities Class Action;

(b) Increased director and officer insurance premiums;

(c) The loss of credibility with potential partners and investors; and

(d) Legal costs associated with litigation, investigations, and restatements.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

65. Plaintiff brings this action derivatively and for the benefit of Sorrento to redress injuries suffered, and to be suffered, because of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Sorrento, waste of corporate assets, unjust enrichment, and violations of Section 20(a) of the Exchange Act.

66. Sorrento is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

67. Plaintiff is, and has been continuously at all relevant times, a stockholder of Sorrento. Plaintiff will adequately and fairly represent the interests of Sorrento in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

68. Plaintiff incorporates by reference and re-alleges each allegation stated above as if fully set forth herein.

69. A pre-suit demand on the Board of Sorrento is futile and, therefore, excused. At the time of filing this action, the Board consists of seven members: Individual Defendants Ji, Followwill, Janda, Lemus, Shah, Smith, and Wu (the "Director Defendants"). Plaintiff needs only to allege demand futility as to a majority (four) of the directors who are on the Board at the time this action is commenced.

70. Demand is excused as to all of the Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme in which they engaged, knowingly or recklessly, to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue an action against themselves and the other perpetrators of the scheme.

71. In complete abdication of their fiduciary duties, the Director Defendants either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

72. Demand on Defendant Ji is futile because Ji has served as a Company director since 2006. He has received and continues to receive compensation for his role as Chairman of the Board, President, and CEO as described herein and has served as the Company's CEO and President since 2012. Ji personally made the false and misleading statements in the May 15, 2020 8-K, the Fox news article, and the BioSpace article, as well as the May 20, 2020 Yahoo! Finance interview. He is a named defendant in the Federal Securities Class Action. Further, the 2020 Proxy admits that Ji is not independent. Moreover, the Company has a licensing agreement with Pulsar Therapeutics, Inc. ("Pulsar"), where Ji is chair of the board of directors. As of May 13, 2020, the date of the licensing agreement, Ji held 45% of Pulsar's outstanding shares. For these reasons, Ji breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

73. Demand on Defendant Followwill is futile because Followwill has served as a Company director since 2017. He has received and continues to receive compensation for his role as a director as described herein and has been a member of the Audit Committee during the Relevant Period. For these reasons, Followwill breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

74. Demand on Defendant Janda is futile because Janda has served as a Company director since 2012. He has received and continues to receive compensation for his role as a director as described herein. Further, the 2020 Proxy admits that he is not independent. Additionally, on July 15, 2020, the Company entered into a consulting agreement with Janda for a one-time fee of $250,000 and an option to purchase 150,000 shares granted on August 7, 2020. For these reasons, Janda breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

75. Demand on Defendant Lemus is futile because Lemus has served as a Company director since 2017. He has received and continues to receive compensation for his role as a director as described herein and has been Chairperson of the Audit Committee during the Relevant Period. For these reasons, Lemus breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

76. Demand on Defendant Shah is futile because Shah has served as a Company director since 2013. He has received and continues to receive compensation for his role as a director as described herein. Further, the 2020 Proxy admits that Shah is not independent. Shah owns 5% of Pulsar's outstanding shares as of the date of the licensing agreement, May 13, 2020. For these reasons, Shah breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

77. Demand on Defendant Smith is futile because Smith has served as a Company director since December 2019. She has received and continues to receive compensation for her role as a director as described herein. For these reasons, Smith breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

78. Demand on Defendant Wu is futile because Wu has served as a Company director since 2016. He has received and continues to receive compensation for his role as a director as described herein and has been a member of the Audit Committee during the Relevant Period. For these reasons, Wu breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

79. As trusted Company directors, the above directors conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded their duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded their duties to protect corporate assets. For the above reasons, these Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not independent or disinterested, and thus demand upon them is futile and, therefore, excused.

80. The Director Defendants have longstanding business relationships with each other and the Individual Defendants, which means they cannot act independently and in the best interests of the Company. Shah has served as the President, CEO and a board member of Scilex Holding Company ("Scilex") since its inception in March 2019 and as CEO and a board member of Semnur Pharmaceuticals, Inc. ("Semnur") since its inception in 2013. According to the 2020 Proxy, in March 2019, the Company entered into a merger agreement involving Scilex and Semnur, whereby another company merged into Semnur, with Semnur surviving as a wholly-owned subsidiary of Scilex. At the completion of the merger, Scilex became a subsidiary of the Company. Scilex granted Shah over 12 million options of Scilex stock on June 6, 2019. Scilex has also paid Ji $111,400 in salary for his role as its Executive Chairperson as well as millions of dollars in options. These conflicts indicate that these defendants could not adequately monitor the Company's operations and internal controls and call into question the Individual Defendants' misconduct. Thus, demand upon the Director Defendants would be futile.

81. Further, Smith, Ji, and Shah currently serve together on Celularity, Inc.'s ("Celularity") board of directors. Shah and Smith have served as directors of Celularity since 2016 and August 2019, respectively. Janda served on Celularity's board from September 2018 through December 2019. Therefore, Smith, Ji, and Shah are beholden to one another and demand upon them would be futile.

82. Pursuant to the Company's Audit Charter, the Audit Committee Defendants are responsible for overseeing, among other things, the Company's compliance with laws and regulations and the Company's accounting and financial reporting practices and system of internal controls. The Audit Committee Defendants failed to ensure the integrity of the Company's internal controls, as they are charged to do under the Audit Charter, and allowed the Company to issue materially false and misleading statements with the SEC. Thus, the Audit Committee Defendants breached their fiduciary duties, are not disinterested, and demand is excused as to them.

83. In violation of the Code of Conduct, the Director Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and violations of Section 20(a) of the Exchange Act. In further violation of the Code of Conduct, the Director Defendants failed to comply with laws and regulations, maintain the accuracy of Company records and reports, conduct business in an honest and ethical manner, protect and properly use corporate assets, and properly report violations of the Code of Conduct. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

84. Sorrento has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not filed any lawsuits against themselves or others who were responsible for that

wrongful conduct to attempt to recover for Sorrento any part of the damages Sorrento suffered and will continue to suffer thereby. Thus, any demand upon the Director Defendants would be futile.

85. The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

86. The acts complained of herein constitute violations of fiduciary duties owed by Sorrento's officers and directors, and these acts are incapable of ratification.

**Insurance Considerations**

87. The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Sorrento. If there is a directors and officers' liability insurance policy covering the Relevant Period, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Sorrento, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists,

will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

88. If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Sorrento to sue any other wrongdoers, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

89. Thus, for all the reasons set forth above, all the Director Defendants, and, if not all of them, at least a majority of them, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

**Against the Individual Defendants**
*for Violations of Section 20(a) of the Exchange Act*

90. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

91. The Individual Defendants, by virtue of their positions with Sorrento and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Sorrento and officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence, and exercised same, to cause Sorrento to engage in the illegal conduct and practices complained of herein.

92. Plaintiff, on behalf of Sorrento, has no adequate remedy at law.

## SECOND CLAIM

**Against Individual Defendants**
*for Breach of Fiduciary Duties*

93. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

94. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Sorrento's business and affairs.

95. Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

96. The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Sorrento.

97. In breach of their fiduciary duties, the Individual Defendants caused the Company to engage in the misconduct described herein.

98. In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure, controls, and procedures.

99. Also in breach of their fiduciary duties, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements during the Relevant Period, that assured investors that Sorrento possessed a cure to the coronavirus, yet failed to disclose that STI-1499 only had the "potential" to be a cure.

100. The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and/or misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

101. The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants either had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and

disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

102. The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

103. These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

104. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Sorrento has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

105. Plaintiff, on behalf of Sorrento, has no adequate remedy at law.

## <u>THIRD CLAIM</u>

**Against Individual Defendants**
*for Unjust Enrichment*

106. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

107. By their wrongful acts, violations of law, false and misleading statements, and omissions of material fact that they made and/or caused to be made,

the Individual Defendants were unjustly enriched at the expense and to the detriment of Sorrento.

108. The Individual Defendants either benefitted financially from the improper conduct, received unjust compensation tied to the false and misleading statements, received bonuses, stock options, or similar compensation from Sorrento tied to the performance or artificially inflated valuation of Sorrento, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct, or sold stock at artificially inflated prices during the Relevant Period.

109. Plaintiff, as a stockholder and a representative of Sorrento, seeks restitution from the Director Defendants and seeks an order from this Court disgorging all profits— including benefits, performance-based, valuation-based, and other compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

110. Plaintiff, on behalf of Sorrento, has no adequate remedy at law.

## FOURTH CLAIM

**Against Individual Defendants**
*for Waste of Corporate Assets*

111. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

112. As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions and engage in internal investigations, and Sorrento will lose financing from investors and business from future customers who no longer trust the Company and its products.

113. Because of the waste of corporate assets, the Individual Defendants are each liable to the Company.

114. Plaintiff, on behalf of Sorrento, has no adequate remedy at law.

## PRAYER FOR RELIEF

**FOR THESE REASONS**, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

A. Declaring that Plaintiff may maintain this action on behalf of Sorrento, and that Plaintiff is an adequate representative of the Company;

B. Declaring that the Individual Defendants have breached their fiduciary duties to Sorrento;

C. Determining and awarding to Sorrento the damages sustained by it because of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre- and post-judgment interest thereon;

D. Directing Sorrento and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and protect Sorrento and its stockholders from a repeat of the damaging events described herein;

E. Awarding Sorrento restitution from Individual Defendants;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

G. Granting such other and further relief as the Court may deem just and proper.

Dated: July 23, 2021

Respectfully submitted,

*s/ Betsy C. Manifold*

BETSY C. MANIFOLD

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Betsv C. Manifold

Rachele R. Byrd
Marisa C. Livesay
Brittany N. DeJong
750 B Street, Suite 1820
San Diego, CA 92101
T: 619-239-4599
F: 619-234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

**LEVI & KORSINSKY, LLP**
Correy Kamin
Ryan Messina
55 Broadway, 10th Floor
New York, NY 10006
T. 212.363.7500
F. 212.363.7171
ckamin@zlk.com
rmessina@zlk.com

*Attorneys for Plaintiff Sachin Chaudhari*